IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TOMMY HEWITT, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:11-cv-00892 |
| | § | |
| WEATHERFORD INTERNATIONAL LTD., ET AL. | § | JURY DEMANDED |
| | § | |
| | § | |
| *Defendants.* | § | |

**DEFENDANTS WEATHERFORD U.S., L.P. AND INTEGRITY DELAWARE, LLC'S MOTION FOR SUMMARY JUDGMENT**

Defendants Weatherford U.S., L.P. and Integrity Delaware, LLC (collectively referred to herein as "Defendants") file this Motion for Summary Judgment and would respectfully show the Court as follows:

## I.

## STATEMENT OF THE CASE

Plaintiff Tommy Hewitt alleges that Defendants discriminated against him because of an alleged disability and failed to accommodate his alleged disability in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*

## II.

## UNDISPUTED FACTS

1. Plaintiff Tommy Hewitt ("Hewitt") was hired by Defendant Integrity Industries in April 2008 as a "yard man." His duties as a yard man included operating a forklift, pulling orders, loading and unloading trucks, and storing product. (Hewitt Depo. at pp. 12-13)

2. Initially, Hewitt's supervisor was Ricky Slaughter; subsequently, Christiaan Shaddock became Hewitt's supervisor. (Hewitt Depo. at pp. 14, 21)

3. After training, Hewitt learned how to perform his job. According to Hewitt, he was doing a good job, and continued to do a good job after Christiaan Shaddock became his supervisor. Hewitt knows how to read and write and operate a calculator. (Hewitt Depo. at pp. 14-16, 20-21)

4. Hewitt was able to perform his job under Shaddock's supervision; he did a "fairly good" job. (Hewitt Depo. at p. 55)

5. Hewitt alleges that he has a learning disability which makes him take longer to grasp things. According to Hewitt, he has to take it slow in order to figure things out; once he has figured it out, then he is okay. Hewitt has a driver's license and drives a car. He is able to take care of himself and to cook meals. (Hewitt Depo. at pp. 56-57)

6. According to co-workers, Hewitt knew how to do his job. Even under Shaddock's supervision, according to Hewitt, he was still able to perform his job. (Hobbs Depo. at pp. 17-19; Bentley Depo. at pp. 49-52; Hewitt Depo. at p. 55) There is no testimony from any co-workers that Hewitt could not do his job.

7. According to Hewitt, Shaddock and Hewitt had a conversation about a pallet of caustic that was broken. During this conversation, Hewitt, in his words, kicked a puddle of water, told Shaddock that he couldn't please him, and if he was going to let him go . . . , and walked away. Hewitt confirmed this to Rashad Bentley. (Hewitt Depo. at pp. 44-46) As a result, Hewitt was terminated effective December 4, 2009. According to Shaddock, Hewitt

became agitated as described above. Hewitt yelled and cursed and pushed over a wrap stand. He was sent home and terminated the next day. (Shaddock Depo. at pp. 72-76, 113-115, Ex. 4)[1]

## III.

## ARGUMENT AND AUTHORITIES

### A. Summary Judgment Standards.

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an essential element to that party's case, and on which that party will bear the burden at trial. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Little*, *supra*; *Bozé v. Branstetter*, 912 F.2d 801, 804 (5th Cir. 1990). Material facts are those facts "that might affect the outcome of the suit under the governing law." *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998). Factual controversies are resolved in favor of the nonmovant "only when there is an actual controversy—that is, when both parties have submitted evidence of contradictory facts." *Laughlin v. Olszewski*, 102 F.3d 190, 193 (5th Cir. 1996).

The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue with respect to those issues on which the movant bears the burden of proof at trial. The movant meets this initial burden by showing that the "evidence in

[1] Hewitt denies pushing over the wrap stand. At least one other employee, Burlon Hobbs, witnessed it. (Hobbs Depo. at pp. 32-33)

the record would not permit the nonmovant to carry its burden of proof at trial." *Smith*, 158 F.3d at 911. The burden then shifts to the nonmovant to demonstrate that summary judgment is inappropriate. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). This is accomplished by producing "significant probative evidence" that there is an issue of material fact so as to warrant a trial. *Texas Manufactured Housing Ass'n, Inc. v. City of Nederland*, 101 F.3d 1095, 1099 (5th Cir. 1996). The evidence must be "sufficient to support a jury verdict." *Morris*, 144 F.3d at 380.

**B. Plaintiff Has Failed to Establish That Defendants Violated the ADA.**

**1. Hewitt is not protected under the ADA.**

The ADA prohibits employers from discriminating against a "qualified individual with a disability because of the disability." 42 U.S.C. § 12112(a). A "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* § 12111(8).

A person is disabled under the ADA when that person has a "physical or mental impairment that substantially limits one or more major activities of such individual." 42 U.S.C. § 12102(1)(A). A court must initially determine whether an individual suffers from a physical or mental impairment. A mental impairment is "any mental or psychological disorder, such as an intellectual disability . . . , organic brain syndrome, emotional or mental illness, and specific learning disabilities." 29 C.F.R. § 1630.2(h)(2). Next, a court must determine whether or not such an impairment affects a major life activity. The regulation underlying the ADA explicitly lists learning as a major life activity. 42 U.S.C. § 12102(2)(A).

Thus, Hewitt must establish that any alleged learning disability substantially limits his ability to learn. Defendants recognize that in 2008, Congress amended the ADA to include

significant changes to the "substantially limits" standard. The regulations now provide that an impairment is a disability if it "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. Nonetheless, not every impairment will constitute a disability within the meaning of this section." 29 C.F.R. § 1630.2(j)(1)(ii).

Defendants respectfully submit that the evidence in this case shows that any alleged learning disability suffered by Hewitt did not substantially impair his ability to learn. He was able to learn how to function at his job and, according to him, do it well. Although he now complains that Shaddock did not give the same kind of individualized attention to Hewitt as compared with Slaughter, Hewitt remained able to perform his job. He complains that Shaddock often changed directions and instructions, but in spite of that, Hewitt admits that he was able to "catch on to the new directives." Plaintiff's Complaint at ¶ 23. Hewitt's complaint that he should have been reasonably accommodated with more individualized supervision and instruction simply fails, because he was able to perform his job in spite of that complaint.

**2. Hewitt was not terminated because of his alleged disability.**

Hewitt asserts that his termination violated the ADA. Courts analyze such claims utilizing the tri-partite burden-shifting framework articulate in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that framework, Hewitt must first establish a *prima facie* case of discrimination. He must show that he was disabled, was qualified to perform the essential functions of his job, with or without reasonable accommodation, suffered an adverse employment action because of his disability, and was treated less favorably than non-disabled employees. *McInnis v. Alamo Community College Dist.*, 207 F.3d 276, 279-80 (5th Cir. 2000).

Defendants respectfully submit that Hewitt cannot establish a *prima facie* case of discrimination in violation of the ADA. First, Hewitt must establish that he was disabled. *See, e.g., Kemp v. Holder*, 610 F.3d 231 (5th Cir. 2010). As noted above, he cannot establish a covered disability. Secondly, there is no evidence that there was any causal connection between an alleged disability and his termination. Although facts are in dispute, even according to Hewitt, he clearly invited his termination. Arguing with Shaddock, telling Shaddock that he (Hewitt) couldn't please him, arguing and becoming agitated, and then walking away, evidences an unacceptable attitude on the part of any employee.

Even if Hewitt has established a *prima facie* case, a termination in the face of such conduct is a legitimate, nondiscriminatory reason for termination. Thus, Hewitt must bring forth sufficient evidence to create a genuine issue that Defendants' proffered reason was pretextual. In order to show pretext, Hewitt must either demonstrate that Defendants' stated reason for his termination is "unworthy of credence." *Carmona v. Southwest Airlines Co.*, 604 F.3d 848 (5th Cir. 2010); *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133 (2000). There is no such evidence in this case.

Based on the foregoing, Defendants respectfully submit that they are entitled to summary judgment as a matter of law.

WHEREFORE, PREMISES CONSIDERED, Defendants respectfully request that their Motion for Summary Judgment be granted in its entirety, and that the Court grant such other relief, legal and equitable, as Defendants would show themselves to be justly entitled.

Respectfully submitted,

/s/R. Michael Moore
R. Michael Moore
State Bar No. 14371400
Federal I.D. No. 4354
LAW OFFICE OF R. MICHAEL MOORE
7500 San Felipe St., Suite 335
Houston, Texas 77063
Telephone: 713-621-8185
Facsimile: 713-621-8184
Email: rmmoore@sbcglobal.net

ATTORNEY-IN-CHARGE FOR DEFENDANTS
WEATHERFORD U.S., L.P. AND
INTEGRITY DELAWARE, LLC

CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of September, 2012, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Ms. Jo Miller
Law Office of Jo Miller, PLLC
The Parsonage
505 North Main
Conroe, Texas 77301
*Attorney-in-Charge for Plaintiff*

/s/R. Michael Moore
R. Michael Moore